UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**MARIO TREVINO TUNCHEZ,**          )
                                    )
    **Plaintiff,**    )
                                    )
    v.               )    Civil Action No. 09-473 (CKK)
                                    )
**U.S. DEP'T OF JUSTICE *et al.*,** )
                                    )
    **Defendants.**   )
_____ )

### MEMORANDUM OPINION

Plaintiff Mario T. Tunchez filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. The defendants, the Department of Justice ("DOJ") and the Department of Homeland Security ("DHS"), jointly filed a motion for summary judgment. Because there are no material facts in genuine dispute and the defendants are entitled to judgment as a matter of law, the motion will be granted.

BACKGROUND

Tunchez, a prisoner serving a federal sentence, sent a FOIA request to the Bureau of Alcohol Tobacco Firearms and Explosives ("BATFE") seeking all documents in any format about him, referring to him, or related to a criminal investigation of him dating back to January 1990. Compl. Ex. A. The request stated that BATFE agents took part in the investigation leading to his prosecution, provided the case number of the prosecution, and specifically asked that all files — some of which were mentioned by name — be searched. *Id.* Using multiple personal identifiers associated with Tunchez, the BATFE conducted multiple searches on

multiple days of the TECS (Treasury Enforcement Communications Systems) database, which contains BATFE investigative records, and the N-Force case management system of files, which contains records documenting BATFE's investigative activity. Mot. for Summ. J. ("MSJ"), Decl. of Averill P. Graham (May 26, 2009) ("Graham Decl.") ¶¶ 11-15. None of the searches resulted in locating any responsive records. *Id.* ¶ 15. The BATFE advised Tunchez that its search for criminal records relating to him had failed to locate any information about him, and suggested that he might want to check with the Drug Enforcement Administration. Compl. Ex. B. On administrative appeal, the BATFE's response was affirmed. *Id.* Ex. E. Tunchez now challenges the adequacy of the BATFE's search. *See* Opp'n at 7-8.

Tunchez sent a similar request for records about himself to FBI headquarters ("FBIHQ"). Compl. Ex. F. In response, FBIHQ conducted an electronic search of its CRS (Central Records System), using the plaintiff's name, birthdate, social security number, and place of birth to identify any main files associated with him. MSJ, Decl. of David M. Hardy (Sept. 9, 2009) ("Hardy Decl."), ¶¶ 15-20, 25. The FBI sent Tunchez a response stating that "[n]o records responsive to [his] FOIPA request were located by a search of the automated indices [to the main files],"[1] and suggested that he might also want to make a request to a specific FBI field office where the records might be maintained. Compl. Ex. G. This response was affirmed on appeal, and the recommendation to make a request to a field office was reiterated. *Id.* Ex. J. Tunchez

---

[1] In FBI nomenclature, a "main file" is one which has a name corresponding with its subject matter. Hardy Decl. ¶ 17. In other words, a search of FBI "main files" for records relating to Tunchez would be a search for a file identified by Tunchez's name or other personal identifier. The other type of general index the FBI maintains is to a "reference entry," which is a subject referenced within a main file bearing a name other than the within-referenced subject. *Id.*

then sent the same sort of request to the FBI's local office in Brownsville, Texas. *Id.* Ex. K. Despite two follow-up communications regarding that request — one of which was directed to the DOJ's FOIA/PA Referral Unit, he did not receive any acknowledgment or response from the Brownsville office or DOJ with respect to that request. *Id.* Exs. L, M. The FBI has no record of receiving the Brownsville request. Hardy Decl. ¶ 27.

Subsequent to being served with this complaint, the FBI conducted searches — some for the second time — of its main and reference files maintained at FBIHQ and all field offices. Hardy Decl. ¶ 26. This search located two main files, consisting of a total of 176 unique pages of records.[2] *Id.* Of those, 36 pages were released in full, 137 pages were released with redactions, and 3 pages were referred to the Bureau of Prisons ("BOP") for review and release determination. *Id.* The BOP has since released the three pages with redactions. MSJ, Decl. of Ron Hill (July 31, 2009) ¶ 3. Tunchez raises no challenge to the BOP's response. *See* Opp'n at 16. As to the FBI's response, Tunchez argues that the search was inadequate, *id*. at 8-9, that the lack of any response to his Brownsville request remains unexplained and is inexcusable, and that the exemptions claimed for the redactions are invalid because "the information has been released into the public domain via judicial proceedings and media outlets." Opp'n at 10; *see also id.* at 9-12. In addition, Tunchez disputes the propriety of the FBI's decision to withhold information relating to law-enforcement techniques and procedures. *Id.* at 13.

Tunchez also sent the same FOIA request to the United States Customs and Border Patrol ("CBP"), a component of the DHS, seeking records about himself. Compl. Ex. N. In response, the CBP conducted a search of the TECS, the SEACATS (Seized Assets and Case Tracking

---

[2] Another 33 pages of duplicate records were also located. Hardy Decl. ¶ 26.

System), the ENFORCE (Enforcement Case Tracking System), and the ACS (Automated Commercial System), locating four pages of responsive records, which it released to Tunchez with redactions. Decl. of Mark Hanson (Sept. 9, 2009) ("Hanson Decl."), ¶¶ 5-6. The records were released to Tunchez shortly after Tunchez had submitted this complaint for filing, but before the complaint had been served on any defendants. *See* id. ¶ 6 (release of records made under cover of letter dated March 11, 2009); Compl. at 1 ("received" stamped March 3, 2009). Later, in preparing for this litigation, the CBP realized that the staff person who conducted the search did not have access to all parts of the TECS system. *Id.* ¶ 7. Thus, CBP conducted the search again and located an additional 10 pages of responsive records, which were released to Tunchez with redactions. *Id.* In the process, a re-review of the releases made in March resulted in a revision of the original redactions, resulting in additional information being released to Tunchez. *Id.* ¶ 8. Tunchez challenges the timeliness of the CBP's response and argues that the public domain doctrine strips the records of all possible exemptions. Opp'n at 13-15.

DISCUSSION

Under Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted if the pleadings and evidence on file show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering whether there is a triable issue of fact, a court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255. The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial," *id.* at 248, that would permit a reasonable jury to find in his favor, *Laningham v. U.S.*

*Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

To prevail on a FOIA claim, a plaintiff must show that an agency improperly withheld agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). An agency cannot improperly withhold records if it did not receive a request for those records. *Ning Ye v. Holder,* 624 F. Supp. 2d 121, 123-24 (D.D.C. 2009) (citing *Banks v. Lappin,* 539 F. Supp. 2d 228, 235 (D.D.C. 2008)); *see also West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006). Thus, a plaintiff, who bears the burden in this matter, must establish that the agency received the FOIA request. In his verified complaint, Tunchez attests that he submitted a FOIA request to the FBI's office in Brownsville, Texas, and sought assistance from the DOJ's FOIA/PA Referral Unit in obtaining a response. Compl. ¶¶ IV.C.1 - 3 & Exs. K, L, M. The Hardy Declaration attests that the FBI has no record of ever receiving these requests. Hardy Decl. ¶ 27. Tunchez has not provided evidence — such as a return receipt for mail or a letter of acknowledgment — to show that the FBI ever actually received the Brownsville requests. Without such evidence to overcome the FBI's sworn statement that it has no record of receiving the Brownsville requests, Tunchez's FOIA claim arising from the Brownsville requests must fail. *Ning Ye*, 624 F. Supp. 2d at 123-24.

An agency is entitled to summary judgment in a FOIA suit once it demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control, *Kissinger*, 445 U.S. at 150-51, that was reasonably calculated to uncover all relevant information, *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), which either has been released to the requestor or is exempt from disclosure, *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). To show that its search "us[ed] methods which can be reasonably expected to produce the information requested," *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), the agency may submit affidavits or declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search, *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id.* at 127. A search need not be exhaustive, *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985), and the adequacy of a search is not determined by its results, but by the method of the search itself, *Weisberg,* 745 F.2d at 1485. An agency's failure to find a particular document does not necessarily indicate that its search was inadequate. *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

Tunchez asserts that the agencies' searches were inadequate, but he offers no basis for his objection except that (1) some searches did not produce results, or (2) did not produce results until after the lawsuit was filed, or (3) the agency did not search all files or the files he specified in his FOIA request. These objections are each contrary to the law. First, an agency's failure to

find documents, or a particular document, does not necessarily indicate that its search was inadequate. *Wilbur,* 355 F.3d at 678. Second, whether the search was completed before or after the requestor files a lawsuit, the remedy available to the plaintiff in a FOIA suit is the same: access to the documents to which he is entitled under the law. *See* 5 U.S.C. § 522(a)(4)(B) (authorizing a federal court only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld"); *Perry,* 684 F.2d at 125 (stating that "however fitful or delayed the release of information under the FOIA may be, once all requested records are released [in accordance with the lawful exemptions], federal courts have no further statutory function to perform"). Third, a FOIA requestor is not entitled to a search of files specified by the requestor, but rather to a search of files "that are likely to turn up the information requested," *Oglesby,* 920 F.2d at 68, regardless of how many or how few records systems are searched and whether they were identified by the requestor. Accordingly, Tunchez's objections to the agencies' searches are unavailing.

Tunchez concludes that the FBI ultimately found responsive documents at the FBI's Brownsville office. *See* Opp'n at 8-9. As the Hardy Declaration avers only that "FBIHQ and all field offices" were searched, Hardy Decl. ¶ 26, Tunchez's conclusion appears to rest on a premise that Brownsville is a field office. The record submitted does not establish that the Brownsville office is an FBI field office, and the Court has no knowledge that it is a field office. The FBI refers to it as a "Resident agency." Hardy Decl. ¶ 27. Nonetheless, the Hardy declaration establishes that records of the sort requested by Tunchez are maintained by the FBI as part of the CRS. Hardy Decl. ¶ 15. Furthermore, "[c]ertain records in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in

those field offices." *Id.* In light of this information, the Court concludes that the FBI's search of both the main and reference indexes to the CRS at "FBIHQ and all field offices" which was conducted in response to Tunchez's complaint, Hardy Decl. ¶ 26, "was reasonably calculated to uncover all relevant information" responsive to Tunchez's request, *Weisberg,* 745 F.2d at 1485. In sum, based on the agency declarations submitted, the Court finds that the agencies have each conducted searches that were reasonably calculated to produce the information requested, and have complied with the law with respect to their obligation to search.

An agency that withholds information responsive to a plaintiff's request must justify its decision in accordance with the exemptions identified in the FOIA. *See* 5 U.S.C. §§ 552(a)(4)(B), 552(b); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency may accomplish this by submitting "affidavits or declarations that describe the documents involved and justify the non-disclosure in a clear, specific and reasonably detailed manner, and that are not controverted by either contrary evidence in the record [or] evidence of agency bad faith." *Voinche v. FBI*, 412 F. Supp. 2d 60, 64-65 (D.D.C. 2006) (internal quotation marks and citations omitted). "These affidavits or declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* at 65 (internal quotation marks omitted).

In this case, the defendants have asserted FOIA Exemptions 2, 3, 6, 7A, 7C, 7D, and 7E to justify the nondisclosures made by the CBP, FBI, and BOP.[3] In what appears to be a global challenge to the information withheld, Tunchez argues that the records are stripped of their statutory exemptions "because the information has been released into the public domain via judicial proceedings and media outlets." Opp'n at 10. Without assessing the applicability of this exemption to all the withheld information, Tunchez has not "'point[ed] to specific information in the public domain that appears to duplicate that being withheld,'" as the law requires him to do before a court can find that the exemption has been waived by the public domain doctrine. *Cottone v. Reno,* 193 F.3d at 555-56 (D.C. Cir. 1999) (quoting *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Because Tunchez has not identified any specific information or the"the *exact* portions" of a specific document that is in fact "preserved in a permanent public domain," *id.* (internal quotation marks omitted), his public domain challenge fails.

---

[3] *See* exemptions, 5 U.S.C. §§ 552(b)(2) (exempting information "related solely to the internal personnel rules and practices of an agency"); (b)(3) (exempting information "specifically exempted from disclosure by statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld"); (b)(6) (exempting "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"); (b)(7) (exempting "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law").

Tunchez also specifically targets the redactions made pursuant to Exemption 7E relating to "'techniques and procedures' used for law enforcement investigations and prosecutions." Opp'n at 13 (quoting MSJ at 26). His challenge, however, is limited to asserting that the FBI's declaration fails to make the required showing to justify withholding the information. *Id.* ("No where [sic] in the memorandum of law or Hardy declaration does the FBI even attempt to make a show [sic] as required by law, ...."). A review of the Hardy Declaration, submitted on behalf of the FBI, leads to a contrary conclusion. Hardy explains that the information relating to techniques and procedures that the FBI is withholding would, if released, identify which among the 27 techniques and procedures listed on the documents were used in investigating Tunchez, and the FBI's evaluation of those techniques and procedures. Hardy Decl. ¶¶ 70-71. This is information the FBI does not want to fall into the hands of other investigative targets who might find such information useful in evading detection. *Id.* The Hardy Declaration provides adequate justification for withholding the information under Exemptions 2 and 7E. Tunchez raises no other specific objections to the information withheld. Upon review of the Hanson, Hardy and Hill Declarations, the Court finds that the CBP, FBI and BOP have justified the withholdings as required by law.

The FOIA expressly requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Each of the declarations filed on behalf of the FBI and the CBP attests that the responsive records were reviewed for segregability and that all non-exempt reasonably segregable information was released. Hanson Decl. ¶¶ 20-21; Hardy Decl. ¶¶ 31, 72. A review of the documents released to Tunchez with redactions provides no basis for doubting

the veracity of the segregability assertions in those two declarations. *See* MSJ, FBI Ex. J, CBP Exs. A & B. The BOP's declaration also demonstrates that it segregated and released all non-exempt information. *See* Hill Decl. Ex. B (stating that only "third party information" was redacted from the 3 pages released to Tunchez). Tunchez does not dispute any these attestations or raise any challenges related to segregability. On this record, the Court finds that the CBP, FBI, and BOP satisfied the FOIA's requirements to release all responsive non-exempt information that could reasonably be segregated and released.

## CONCLUSION

The defendants have submitted clear, specific, detailed and non-conclusory explanatory declarations that establish that each agency has conducted searches reasonably calculated to produce the information requested, and has released all reasonably segregable non-exempt information. The objections the plaintiff has lodged lack merit. Accordingly, the defendants' motion will be granted and judgment will be awarded to the defendants.

A separate order accompanies this memorandum opinion.

Date: June 3, 2010

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

-11-